UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE BROOKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEE'S CANDIES, INC., a California corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | No. 2:20-cv-01236-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Valerie Brooks, who is legally blind, seeks redress from Defendant See's Candies, Inc. ("Defendant" or "See's") on grounds that Defendant's website is not fully accessible to the visually impaired and therefore violates both the Americans with Disabilities Act, 42 U.S.C. §§ 12181, et seq. ("ADA") and California's Unruh Civil Rights Act, California Civil Code §§ 51, et seq.  Plaintiff also seeks class-wide relief, including injunctive relief, statutory damages, and attorney's fees and costs, on behalf of all others similarly situated.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint, made pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] on grounds that said

---
[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

Complaint fails to state a claim upon which relief can be granted.  As set forth below, that Motion is GRANTED.[2]

## BACKGROUND

Plaintiff, who uses screen-reading software to browse the Internet, claims that she tried to visit Defendant's website, htpps://www.sees.com/, on several unspecified occasions as recently as 2020 but encountered "multiple access barriers" in navigating the website while using that software.  Plaintiff also claims that those barriers "have deterred [her] from visiting Defendant's brick-and-mortar stores."  Compl., ECF No. 1, ¶ 26.  According to Plaintiff, she was therefore prevented both from accessing See's website and "impeded from the full and equal enjoyment of goods and services offered in Defendant's stores and from making purchases at such physical locations."  Id. at ¶ 29.

As factual support for her claim that the See's website interfered with her access to Defendant's physical shops, Plaintiff alleges only that she "was unable to find the location and hours of operation of Defendant's locations on its website, [thereby] preventing [her] from visiting the locations to view and purchase products and/or services."  Id. at ¶ 31.

In terms of the offending website barriers themselves, Plaintiff points to several alleged shortcomings, including most notably the lack of alternative text ("alt-text") code embedded beneath a website graphic or image that would enable the screen-reading software to describe the graphic or image for a sight-impaired user.  In addition to preventing Plaintiff not only from determining just what chocolates and other products were available on the website, Plaintiff also avers that the failure to provide "alt-text" coding makes her unable to "find Defendant's store locations."  Id. at ¶ 27a.  She

---

[2] Having concluded that oral argument would not be of material assistance, the Court submitted this matter on the briefs pursuant to E.D. Local Rule 230(g).

provides no further explanation as to why the inability to have graphics or images explained to her by way of "alt-text" prevented her from ascertaining where See's brick-and-mortar stores are located.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

3

1  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
2  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
3  relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their
4  claims across the line from conceivable to plausible, their complaint must be dismissed."
5  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge
6  that actual proof of those facts is improbable, and 'that a recovery is very remote and
7  unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
8       A court granting a motion to dismiss a complaint must then decide whether to
9  grant leave to amend.  Leave to amend should be "freely given" where there is no
10 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
11 to the opposing party by virtue of allowance of the amendment, [or] futility of the
12 amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
13 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
14 be considered when deciding whether to grant leave to amend).  Not all of these factors
15 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
16 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
17 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
18 "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,
19 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
20 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
21 1989) ("Leave need not be granted where the amendment of the complaint . . .
22 constitutes an exercise in futility . . . .")).
23
24                        **ANALYSIS**
25
26     **A.**    **ADA Claim**
27     In enacting the ADA, Congress intended 'to provide a clear and comprehensive
28 national mandate for the elimination of discrimination against individuals with

disabilities." Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 589, (1999) (quoting 42 U.S.C. § 12101(b)(1) ). Title III of the ADA advances that goal by providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

As California's Fourth District Court of Appeal noted in Martinez v. San Diego County Credit Union, 50 Cal. App. 5th 1048 (2020), in defining a place of "public accommodation" subject to protection under Title III, the ADA enumerates twelve categories of covered "places" and "establishments" that mainly reference physical locations. Id. at 1060. The implementing regulations provide no further detail and simply refer to a "public accommodation" as a "facility," which is in turn defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock ... or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104.

The fact that a business website is not included within these statutory categories is hardly surprising given the fact that the ADA was promulgated in 1990, well before websites assumed the prominent position they now occupy in American commerce. Although the regulatory agency charged with implementing the ADA (the Department of Justice ("DOJ")) has previously endorsed the applicability of Title III to "web sites of public accommodations," the DOJ has provided no specific regulatory guidance as to whether a website may itself constitute a place of public accommodation if untethered from a physical location. Robles v. Domino's Pizza, LLC, 913 F.3d 898, 903, 906-907, 910 (9th Cir. 2019).

While courts addressing this unsettled question have split, the majority view, and the position adopted by the Ninth Circuit in Robles, is that even if websites are not "public accommodations" under the ADA, a denial of equal access to a website can nonetheless support an ADA claim if the denial has prevented or impeded a disabled

plaintiff from equal access to, or enjoyment of, the goods and services offered at the defendant's physical facilities. See Martinez, 50 Cal. App. 5th at 1063, citing Robles, 913 F.3d at 905-06. Consequently, the salient issue becomes whether the website sufficiently connects customers to the services of an actual store so as to trigger entitlement to protection under the ADA.

Robles represents controlling Ninth Circuit precedent in answering this question. That case involved an ADA claim against Domino's Pizza regarding its website and app, which both allowed customers to order pizzas and other foods from brick-and-mortar Domino's locations either for at-home delivery or for in-store pickup. 913 F.3d at 902. The plaintiff, who was also sight-impaired, claimed she could not order a customized pizza from a nearby Domino's because of the incompatibility of the app and website with screen-reader software. Although the district court granted Domino's motion to dismiss, the Ninth Circuit reversed, concluding that the plaintiff had met her burden in establishing a sufficient nexus between Domino's website and app and its physical restaurants because the website and app allowed customers to order pizzas directly from the stores. Id. at 905 ("Domino's website and app . . . are two of the primary (and heavily advertised) means of ordering Domino's products to be picked up at or delivered from the Domino's restaurants."). Consequently, since the website and app "facilitated access to the goods and services of a place of public accommodation" under those circumstances, Robles found they fell within the purview of the ADA. Id. at 905. In other words, according to Robles, the ADA applied because the website there "connected customers to the goods and services of [the defendant's] physical" place. Id. at 905-06.[3]

///

---

[3] Robles expressly declined to decide whether ADA covers the websites or apps of a physical place of public accommodation where their inaccessibility does not impede access to the goods and services of a physical location. Id. at 905, n.6. As the Northern District recently noted in Langer v. Pep Boys Manny, Moe & Jack of California, No. 20-cv-06015-DMR, 2021 WL 148237 at *5 (N.D. Cal. Jan. 15, 2021), however, "[o]n their own, websites are not places of public accommodation. (citing Cullen v. Netflix, Inc., 880 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services").

The instant matter fails to identify any similar nexus. Plaintiff here does not allege she tried to order candy from the website for pickup at a See's shop but was unable to do so. Nor does she identify any comparable integration between the See's website and its physical stores comparable to that encountered in Robles. Instead, she identifies only a store locator that, by all indications, would have no functional difference from the results obtained by a simple Google search for See's shops on any internet browser. She identifies none of the interconnectedness present in Robles between the See's website and the actual place of public accommodation that would make the website deserving on ADA protection.

A California Court of Appeal case decided shortly after Robles is also instructive. In Thurston v. Midvale Corp., 39 Cal. App. 5th 634 (2019) a blind woman sued a restaurant for disability discrimination under the Unruh Civil Rights Act for maintaining a website that was incompatible with her screen reading software. The Thurston court found the requisite nexus between the restaurant's website, and the restaurant itself was satisfied by facts showing that website provided consumers with the opportunity to review the menu and make a reservation, which the court found expedited the customer's ability to obtain the benefits of the restaurant's physical facility. Id. at 638, 645-46. As Thurston explained, these website features "speed[ ] up" the customer's "experience at the physical location" and thus facilitate the use and enjoyment of the services offered at the restaurant. Id. at 645. Thurston agreed with Robles that the ADA was implicated because these factors "connect[ed] customers to the services of the restaurant." Id. at 646. Again, no such nexus between See's website and its physical stores has been alleged here. Plaintiff's complaint is devoid of any allegation that the website is integrated with Defendant's physical locations in any specific way.

In another Northern District case, Estavillo v. Blizzard Entm't, Inc., No. 5:19-cv-05540-EJD, 2019 WL 6612061 at *3 (N.D. Cal. Dec. 5, 2019), the court rejected the plaintiff's claim that the ADA applied to a video developer's "digital storefront" where there were no allegations that the website in question was "heavily integrated with

physical store locations" and operated as a "gateway" to those locations. As an example of factual circumstances where the requisite integration was present, Estavillo pointed to Gil v Winn Dixie Stores, Inc., 242 F. Supp. 3d 1315, 1345, 1348 (S.D. Fla. 2017), where the website allowed customers to refill prescriptions online and then choose any Winn-Dixie store with a pharmacy to pick up the prescription.[4] Id. at 1277. Similarly, in Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946 (N.D. Cal. 2006), another case cited by Estavillo, plaintiff alleged that the Target website at issue allowed customers to take a variety of actions related to in-store products and services, including refilling a prescription or ordering photos for store pick-up, or printing coupons to be redeemed at a physical Target location. Id. at 949.[5] Those circumstances also constituted a sufficient nexus between the website and a brick-and-mortar Target store to confer ADA protection under Title III. Id. at 954-55. Here, on the other hand, there are no averments of any comparable integration between See's website and its stores, let alone allegations that the See's website was a "gateway" to those stores. Plaintiff's ADA claim as currently constituted therefore fails.

### B. Unruh Act Claim

Having determined that Plaintiff's ADA claim fails, her remaining claim, for violation of California's Unruh Act, also fails to state a viable cause of action. A plaintiff can recover under the Unruh Act either on grounds 1) that a violation of the ADA has occurred under Cal. Civ. Code § 51(f); or 2) that he or she has been denied access to a business establishment due to intentional discrimination in violation of § 52. See

---

[4] It should be noted that even under those facts, the Eleventh Circuit reversed the district court's decision in Gil, holding that websites are not places of public accommodation falling under the statutory purview of the ADA. Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1277 (11th Cir. 2021). While noting that the Ninth Circuit came to a differing conclusion in Robles, supra, the Eleventh Circuit disagreed with the Ninth Circuit's application, in Robles, of the "nexus" standard in determining whether the website was sufficiently connected to a physical location so as to trigger ADA protection. Id. at 1283-84. Obviously Robles remains controlling authority here.

[5] Also instructive is the Central District's decision in Reed v. CVS Pharmacy, Inc., No. CV 17–3877–MWF (SKx), 2017 WL 4457508 at *3 (C.D. Cal. Oct. 3, 2017), where potential liability under the ADA was found upon allegations that the CVS mobile app at issue allowed her to browse products actually on the shelves of physical CVS pharmacies. The present complaint is devoid of any such averments.

Munson v. Del Taco, Inc., 46 Cal. 4th 661, 670 (2009).  Because Plaintiff has stated neither a cognizable ADA claim nor made any allegations that she was subject to intentional discrimination by See's, she has not pleaded a viable Unruh Act claim.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is GRANTED.[6]  Should she choose to do so, Plaintiff may file an amended pleading not later than twenty (20) days after the date this Memorandum and Order is electronically filed.  Failure to do so will result in this action being dismissed, in its entirety, without further notice to the parties.

IT IS SO ORDERED.

Dated:  August 12, 2021

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The Court recognizes Defendant's request that Plaintiff's Opposition (ECF No. 12) be stricken because it was filed two days late.  Because Plaintiff's opposition was filed together with a declaration from counsel explaining that the Opposition, while timely prepared, was inadvertently not filed due to clerical error, the Court believes that good cause has been shown under Rule 6(b) to permit the late filing.  In addition, while Defendant alleges that its time for filing a reply was shortened to three days because of the tardy opposition, counsel does not allege that it was thereby precluded from filing an adequate reply.  Defendant's request is therefore denied.